UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 3:26-cr-58-JEP-SJH
18 U.S.C. § 1343

JUSTIN BURNS

## INDICTMENT

The Grand Jury charges:

### COUNTS ONE - THREE
### (Wire Fraud)

#### A.    Introduction

At all times material to this indictment:

1.    The United States Small Business Administration (SBA) processed applications for Economic Injury Disaster Loans (EIDLs).

2.    The SBA and United States Department of the Treasury utilized and accessed computer servers/data centers outside of the state of Florida as part of conducting business lending in connection with EIDLs.

3.    Justin Burns was a resident of Jacksonville, Florida and did not own or operate any business eligible to receive a COVID-19 EIDL that operated in the communications industry, or otherwise. Burns did not own or operate any business that had a license from the Florida Department of Business and Professional Regulation.

4.   Person-1 was resident of Jacksonville, Florida, and a pastor at a church that Burns attended. Person-1 approached Burns about participating in applying for a COVID-19 EIDL in Burns's own name. The application presented Burns as the Chief Executive Officer (CEO) of a business involved in the communications industry, when in fact he was not.

5.   On or about June 24, 2020, Burns, at the direction of Person-1, provided and filled out his biographical information on the SBA's website. Burns and Person-1 caused SBA Rapid Finance Application number 3306365851 to be submitted from the Middle District of Florida to the SBA for an EIDL (loan number ending 8009 for $120,000) and an advance of up to $10,000, stating that Burns was the CEO of a communications company doing business under the name "Justin Burns." On or about June 29, 2020, an EIDL advance of $10,000 was disbursed and subsequently deposited into Burns's Navy Federal Credit Union account ending in 3556. On or about June 29, 2020, the EIDL loan of $120,000 was disbursed and subsequently deposited into Burns's Navy Federal account ending in 3556.

**The Small Business Administration**

6.   The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

7.   The SBA enabled and provided for loans directly and through banks, credit unions, and other lenders which had government-backed guarantees. In addition to traditional SBA funding programs, the Coronavirus Aid, Relief, and Economic

2

Security (CARES) Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

### The Economic Injury Disaster Loan Program

8.     The CARES Act expanded eligibility for the SBA's EIDL program. An EIDL is a type of disaster loan made directly to businesses and nonprofit organizations to cover operating expenses including fixed debts, payroll, accounts payable, and other bills that cannot be paid due to the economic impact of a disaster. The CARES Act also authorized payments known as emergency EIDL grants, or advances. The COVID-19 EIDL and EIDL advance programs provided funding to help small businesses recover from the economic impacts of the COVID-19 pandemic. The EIDL loans were not forgivable and must be repaid in full. In contrast, the EIDL advances were limited to $10,000 and did not require repayment.

9.     The COVID-19 EIDL was a loan directly from the SBA and proceeds were to be used for working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, as well as to pay business debts. The COVID-19 EIDL process required interested applicants to apply directly through the SBA's website. The application contained information as to the business, its sales and expenses, its number of employees, and its owner. Applicants were also required to make certain good faith certifications, including that all of the information in the application was true and correct.

10.     The applicant was required to certify an understanding that knowingly making a false statement to obtain a disaster loan from the SBA or misapplying the

3

proceeds of a disaster loan is punishable under the law and subject to criminal penalties.

## B. The Scheme and Artifice

11.    Beginning on an unknown date, but no later than in or around June 2020, and continuing through at least in or around July 2020, in the Middle District of Florida and elsewhere, the defendant,

JUSTIN BURNS,

knowingly devised and intended to devise and aided and abetted a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C. Manner and Means of the Scheme and Artifice

12.    The manner and means by which the defendant sought to accomplish and aid and abet the scheme to defraud included, among others, the following:

a.    It was part of the scheme and artifice that in June 2020, Burns, at the direction of Person-1, would and did fraudulently complete and aid and abet the completion and electronic submission of SBA Rapid Finance Application number 3306365851 (Application) for a COVID-19 EIDL ending in 8009 and advance for a purported business by the name of "Justin Burns" as an Independent Contractor, for purposes of applying for a COVID-19 EIDL and advance to which Burns and Person-1 were not entitled.

4

b.     It was further a part of the scheme and artifice that when fraudulently completing the Application for the EIDL ending in 8009 in June 2020, Burns and Person-1 would and did list the purported business's gross receipts/sales as $440,000, when there was no such gross income for that business and the business never existed.

c.     It was further a part of the scheme and artifice that, as part of the loan process, on or about June 29, 2020, Burns would and did electronically sign a Loan Authorization and Agreement for SBA COVID-19 EIDL ending in 8009, in which he certified the loan proceeds would be used solely as working capital to alleviate economic injury caused by the COVID-19 emergency, corresponding to a loan amount of $120,000.

d.     It was further a part of the scheme and artifice that when electronically signing the Loan Authorization and Agreement on or about June 29, 2020, Burns would and did certify that all of the representations in the Application were true, correct and complete, when in fact they were not.

e.     It was further a part of the scheme and artifice that Burns and Person-1 would and did provide financial institution account information into which the fraudulently-obtained COVID-19 EIDL funds would be transferred via a ACH payment / wire transfer to Burns's Navy Federal Credit Union account.

f.     It was further a part of the scheme and artifice that Burns and Person-1 would and did cause the United States Department of the Treasury to send

5

COVID-19 EIDL advance proceeds via a ACH payment / wire transfer to Burns's bank account at Navy Federal.

g.      It was further a part of the scheme and artifice that Burns and Person-1 would and did cause the United States Department of the Treasury to send COVID-19 EIDL loan proceeds via a ACH payment / wire transfer to Burns's bank account at Navy Federal for the loan.

h.      It was further a part of the scheme and artifice that Burns and Person-1 would and did retain loan proceeds for Burns's and Person-1's personal use(s) from both the COVID-19 EIDL advance proceeds and the COVID-19 EIDL proceeds, which was not for any legitimate COVID-19 EIDL purpose.

i.      It was further a part of scheme and artifice that Burns and Person-1 would and did perform acts, and make statements to promote and achieve the object of the scheme and artifice and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the scheme and artifice and the acts committed in furtherance thereof.

## D. <u>Execution of the Scheme and Artifice</u>

13.    On or about the dates listed below, in the Middle District of Florida and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises,

JUSTIN BURNS,

the defendant herein, did knowingly transmit, cause to be transmitted, and aid and abet the transmission of, the following writings, signs, signals, pictures, and sounds, by means of wire communication in interstate commerce:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| ONE | June 24, 2020 | Electronic submission of the SBA Rapid Finance Application # 3306365851 requesting a COVID-19 EIDL. |
| TWO | June 29, 2020 | ACH Payment / Wire transfer initiation from the U.S. Department of the Treasury to Burns's checking account ending in 3556 in the amount of $10,000. |
| THREE | June 29, 2020 | ACH Payment / Wire transfer initiation from the U.S. Department of the Treasury to Burns's checking account ending in 3556 in the amount of $119,900. |

All in violation of 18 U.S.C. §§ 2 and 1343.

## <u>FORFEITURE</u>

1.    The allegations contained in Counts One through Three are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

7

8

2.      Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture for at least $129,900.00 which represents the proceeds that the defendant obtained as a result of the fraud scheme charged in Counts One through Three.

4.      If any of the property described above, as a result of any act or omission of the defendant:

       a.      cannot be located upon the exercise of due diligence;

       b.      has been transferred or sold to, or deposited with, a third party;

       c.      has been placed beyond the jurisdiction of the court;

       d.      has been substantially diminished in value; or

       e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,



GREGORY W. KEHOE
United States Attorney

By: _____
KELLI A. SWANEY
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division

9

FORM OBD-34
3/26/26 Revised

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

## JUSTIN BURNS

## INDICTMENT

Violations:        18 U.S.C. §§ 2, 1343

A true bill,

Filed in open court this __8th__ day of April 2026.

_____
Clerk

Bail    $_____

GPO 863 525